## State of Vermont v. Joseph LaBarge, et al.

[357 A.2d 121]

No. 230-75

Present: Barney, C.J., Smith, Daley and Larrow, JJ. and Shangraw, C.J. (Ret.), Assigned

Opinion Filed April 6, 1976

*M. Jerome Diamond,* Attorney General and *Phoebe Morse,* Assistant Attorney General, Montpelier, for the State.

*J. William O'Brien,* Burlington and *Ball & Skelly,* Harrisburg, Pennsylvania, for Defendant.

**Barney, C.J.** This is a prosecution for truancy. The State's Attorney of Lamoille County brought criminal actions against several parents in district court in 1974. The charges were that these defendants had failed to cause their school age children to attend school as required by 16 V.S.A. § 1121, after notice under 16 V.S.A. § 1127. Prior to trial, in response to motions to dismiss for lack of a prima facie case under V.R.Cr.P. 12(a) the lower court did dismiss the informations.

Permission was granted to the prosecution to bring this appeal, and the several cases were consolidated for this purpose. The lower court certified the following question:

> In a prosecution under 16 V.S.A. § 1121, was the trial court correct in dismissing the Information on the representation by the State that the Dept. of Education had made no determination of "equivalency" as that term is used in 16 V.S.A. § 1121(b), prior to the filing of this complaint?

The ruling below was made on a state of facts that appears to be, for the purposes of this case, undisputed. The children in question were all attending school, and were of an age where attendance is required, but the school at which they were being educated was a private school, apparently of religious affiliation and admittedly not approved under 16 V.S.A. § 166. The school had applied for such approval but was found deficient in some unspecified particulars, and invited to reapply when they were remedied. To date, it has not done so. The case for the prosecution rests on this unapproved status of the school.

This case must be considered in the light of the fact that the charge involved is a criminal one, potentially subjecting these parents to criminal penalties. It is, therefore, the burden of the prosecution to establish by the requisite measure all of the essential elements of the criminal act. *State* v. *Oakes,* 129 Vt. 241, 258, 276 A.2d 18 (1971).

It is the application of that requirement to this case that is central to the question certified here. The State argues that it is not required, as part of the prima facie case, to negative

each of the exceptions to required attendance enumerated in 16 V.S.A. § 1121:

>  (a) A person having the control of a child between the ages of seven and sixteen years shall cause such child to attend a public school continually for the full number of days for which such school is held, unless such child is mentally or physically unable so to attend or is otherwise being furnished with equivalent education or has completed the tenth grade or is excused by the superintendent or a majority of the school directors as provided in this chapter.
>
>  (b) The determination of equivalency referred to in subsection (a) of this section shall be made by the state department of education and certified to the school directors.

In view of the statutory pattern relating to the institution of such truancy charges, the issue raised by the prosecution cannot be treated in the abstract. Briefly, these matters begin with a notice from a teacher or principal that a child between the ages of seven and sixteen years who should be in school is not. 16 V.S.A. § 1126.

The truant officer's first obligation is to "inquire into the cause of the nonattendance of the child." If he finds that the child is absent "without cause" he has the duty to notify the person having charge of the child that the child is absent without cause, and directing that custodian to require the child to attend school regularly thereafter. 16 V.S.A. § 1127(a).

The notice referred to is a prerequisite to the bringing of proceedings. *State* v. *Burroughs,* 102 Vt. 33, 35–36, 145 A. 260 (1929). 16 V.S.A. § 1127(b) provides that a fine can be assessed only after notice.

Under 16 V.S.A. § 1127(c), the truant officer initiates a prosecution by entering a complaint with the appropriate prosecutor and "shall furnish him with a statement of the evidence upon which such complaint is based." This statutory section then provides:

>  In such prosecution, the complaint, information or indictment shall be deemed sufficient if it states that the

respondent, (naming him) having the control of a child of school age, (naming him) neglects to send such child to school as required by law.

Presumably, the Legislature felt that any indefiniteness in the complaint was compensated for by the specifics called for in the earlier notice. In any event, this question is not raised. But the relationship of the notice to the charge is of moment here. The truant officer in this case did as the statute directed and made inquiry into the cause of the children's absence. He found the children were attending school, but that that school had not been approved by the state board of ecucation under 16 V.S.A. § 166.

According to the affidavits of the truant officer, a part of the record before us, the notices he gave the parents involved were to the effect that their children were in a state of truancy because they were not attending an "approved" school. Under *State* v. *Burroughs*, *supra*, 102 Vt. at 36, this, as the only precedent notice, defines the grounds upon which truancy can be charged.

The concept of notice also effectively nullifies the prosecution's complaint about its burden in dealing with the exceptions. Those exceptions have to be looked into as a preliminary matter before a prosecution commences, so that State is both well aware of the full factual situation, and in a position of selecting the grounds upon which it will rely.

The generalized doctrine expressed in *State* v. *McCaffrey*, 69 Vt. 85, 37 A. 234 (1896) is to the effect that exceptions in a criminal statute that are matters of excuse and not descriptive of the offense must be advanced by the defendant. The State enlists that statement in support of its claim that dismissal was unwarranted, even though without prejudice. This case, insofar as such doctrine may still be sound law, is of little help, since it rests on the proposition that, in that case, the excusatory matter was peculiarly within the knowledge of the accused.

According to 16 V.S.A. § 1121(b), that is not so here. The determination of equivalency must be made by the state department of education. It must also be noted that the truancy statute speaks in terms of "equivalent education" not

in terms of "approved schools." In other words, the truancy statute cannot be taken to require attendance exclusively at "approved schools", barring mental or physical handicap, completion of the tenth grade or excuse by school authorities. This is also evidenced by the recognition of a parent's right to provide an "equivalent education" to his child at home, as indicated by the State's brief.

The United States Supreme Court, in *Pierce* v. *Society of Sisters,* 268 U.S. 510 (1925), long ago decided that a state could not compel all students to be educated in public schools. As recently as *Wisconsin* v. *Yoder,* 406 U.S. 205 (1972), that court has also stated that compulsory school attendance, even in an equivalency basis, must yield to First Amendment concerns. In the light of what is involved in "approval", the state would be hard put to constitutionally justify limiting the right of normal, unhandicapped youngsters to attendance at "approved" institutions.

Even more striking is the effect of premising of truancy on "unapproved" status. 16 V.S.A. § 166(a) states that: "Approval shall be granted if the board finds that the school has the resources required to meet its stated objectives, including financial capacity, faculty, curriculum, physical facilities, and special services." Subsection (b) states, "Certificates of approval . . . may be revoked at any time upon a finding of the state board that the school does not meet the standards required for original approval."

Reading "approval" for "equivalent education" would subject parents to truancy complaints if the school, for example, failed to acquire sufficient library resources or even library tables and chairs to keep up with the enrollment, or if, for some reason, its financial stability suddenly looked risky to the board. This is hardly justification to convert innocent acts for the benefit of children into crimes on the part of parents.

In the light of these considerations we find it clear that the Legislature, when it deliberately selected "equivalent education" in 16 V.S.A. § 1121(a), intended to distinguish it from the concept of school "approval." It may well be that an "approved" school always meets the standard of equivalency. But this does not bar the possibility that "approval" may be denied on a ground unrelated to the "equivalency" test. It is

for that reason that there is the special statutory duty given the state department of education to make such an equivalency determination under 16 V.S.A. § 1121(b).

Since the notice to these parents, and the ensuing prosecution, was based entirely on the status of the school involved as being unapproved, the essential determination that the children are "absent without cause" is not, soundly founded. Without it, the prosecution must fail.

*The certified question is answered in the affirmative, and the dismissals are affirmed.*